## 10069

### ETTISON v. SOUTHERN RY. CO.

(96 S. E. 680.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—QUESTIONS FOR JURY.—In an action by a railroad employee for personal injuries sustained by jumping on a moving train, evidence *held* to justify the refusal of a directed verdict for defendant.

2. APPEAL AND ERROR—RESERVATION OF GROUNDS—QUESTIONS OF LAW AND FACT.—In a railroad employee's action for injuries, the appellate Court will not determine whether there was error in submitting as a question of fact question whether the Federal Employers' Liability Act (U. S. Comp. St. 1916, secs. 8657-8665) or the State law applied, in the absence of a request to hold on the question as a matter of law.

3. MASTER AND SERVANT — INJURIES TO SERVANT — LAW APPLICABLE — FEDERAL EMPLOYERS' LIABILITY ACT—QUESTIONS OF LAW AND FACT.— Where it appears, as matter of law on undisputed evidence, that either the State or Federal law is the applicable law, the Court must apply such law; but if it is an issue of fact as to which law is applicable, the question is for the jury.

4. MASTER AND SERVANT — INJURY TO SERVANT — INSTRUCTIONS. — In a railroad employee's action for personal injuries incurred while boarding a moving train, instructions on the principles of assumption of risk under the State law *held* not misleading, as to whether plaintiff was engaged in intrastate or interstate commerce.

Before WHALEY, County Judge, Richland, November term, 1917. Affirmed.

Action by George W. Ettison, as guardian *ad litem*, against the Southern Railway Company. Judgment for plaintiff, and defendant appeals.

*Mr. Frank G. Tompkins,* for appellant, submits: *That if plaintiff was injured while performing some act incidental to his employment, there was no liability under the case as brought, as it would have been controlled by the Federal Employers' Liability Act:* 229 U. S. 156-161; 235 U. S. 308; 236 U. S. 454; 171 Appellate Div. (N. Y.) 385; Michie on Employers' Liability Act, secs. 129-130; 244 U. S. 532; 244 U. S. 200; 168 S. W. 250.

*Messrs. W. Hampton Cobb,* and *Jas. S. Verner,* for respondent, submit: *That the servant does not assume any risks, which arise from the negligence of the master:* Sec. 3 of the Acts of N. C., February 3, 1913; 233 U. S. 492; 36 A. & E., Am. Cas. 475. *It was the duty of the master to warn and instruct the servant of the danger incident to his employment:* 81 S. E. 1010. *The presiding Judge committed no error in charging both the Federal law and the State law, and allowing the jury to say which governed the rights of the parties:* 106 S. C. 217; 99 S. C. 417; 83 S. E. 639; 101 S. C. 86; 85 S. E. 374; 239 U. S. 352; 36 Sup. Ct. Rep. 126; 60 L. Ed. 324; Code of Civil Procedure, sec. 220. *In the absence of a request, there is no error in the Judge omitting to charge a proposition that might have some bearing on the case, provided that he charged the law correctly in his general charge:* 83 S. C. 257. *That it is the duty of the master to furnish his servant a reasonably safe method to do his work:* 65 S. E. 622; 95 S. C. 138. *Duty of master to warn infant servants of the dangers incidental to their employment:* 81 S. E. 1012. *That contributory negligence would not defeat plaintiff's right to recover:* Federal

Employers' Liability Act; Act of N. C. Legislature of February 3, 1913.

August 15, 1918.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from judgment for plaintiff for damages for personal injury—the loss of plaintiff's right arm—which the jury found was caused by defendant's negligence. At the time of his injury, plaintiff was employed by defendant as a laborer in extending a sidetrack at or near Bridgewater, N. C. The action was brought under the statutes of North Carolina, which plaintiff set out in his complaint, and alleged that they governed the case and his right to recover damages for the injury. Defendant denied generally the allegations of the complaint, and set up the defenses of contributory negligence and assumption of risk, and also invoked the benefit of the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, secs. 8657-8665]), alleging that, at the time of the injury, plaintiff and defendant were engaged in interstate commerce.

Plaintiff alleged that the gang of laborers with which he worked was composed of about 25 men, working under a foreman; that a work train was used to carry materials and the laborers and their tools and implements to and from the camp, or place where the shanty cars in which they slept at night were sidetracked; that, when they quit work for the day, the train was run slowly along the track toward the camp, and the laborers were told to get on it while it was so moving to prevent the necessity of making frequent stops for them to get on, as they were generally at different points along the track; that this method of work was dangerous, but that he was young and inexperienced and did not understand or appreciate the danger of attempting to get on moving trains, and, though defendant knew it, he had never been

warned of the danger; that, about 6 o'clock in the afternoon. of May 9, 1917, after they had quit work for the day, the work train came along as usual, moving about two or three miles an hour, and, according to the custom and the instructions previously given him—though no one told him to do so on that particular occasion—he attempted to get on the train to ride to the camp, which was about a quarter of a mile from the place where they had been at work, and, after he had caught the grabiron on the side of the caboose, and was on the second step of the car, it was given a sudden and violent jerk by the application of the brakes, and he was thrown off and fell under the car, and the wheel ran over and crushed his right arm between the elbow and shoulder so that it had to be amputated. He charged defendant with negligence in adopting a dangerous method of work, in failing to stop the train for him to get on, in causing it to give a sudden and violent jerk, when it was known, or should have been known, that he and the other workmen would probably be attempting to get on it, and in failing to warn him of the danger. Plaintiff offered no other than his own testimony, which tended to prove the allegations of his complaint.

The testimony of defendant's witnesses tended to refute plaintiff's testimony in some of the material points, and it tended to prove that plaintiff had told the foreman that he was 22 years old (plaintiff testified that he was about 16); that he was bad about catching and swinging onto passing trains, and had been frequently warned by the foreman and others of the danger of doing so; that, on the day of the accident, they were at work about 100 yards from the camp, and there was, therefore, no reason for plaintiff to get on the train to ride that distance to the camp; and that he did so for his own pleasure and convenience. The foreman testified that the workmen were not allowed to get on the train while it was in motion, but that it was always stopped on signal from him and held until they could get on; that the

train that came in that afternoon had been at work on a different part of the railroad, and plaintiff's gang had not used that train for more than a week, but it was going into the same camp; that there was no sudden jerk of the car, but that plaintiff fell off because his foot slipped; and that the sidetrack upon which plaintiff had been working had been used from time to time, and was intended to be used, for the passage of trains and cars used in interstate commerce.

At the close of plaintiff's testimony, defendant moved for a nonsuit, on the ground that there was no evidence of negligence, and that the injury was caused by plaintiff's own negligence, or his contributory negligence. The motion was refused; and, at the close of all the testimony, defendant moved for a directed verdict on the following grounds:

"(1) All the evidence shows that plaintiff was injured by his own negligence in getting on a car and falling off of same.

"(2) The great preponderance of the evidence shows that plaintiff was injured by his own negligence by getting on and falling off.

"(3) As the uncontradicted testimony shows that both defendant and plaintiff were engaged in interstate commerce at the time of the injury, and hence plaintiff could not recover in this action as it is brought under the laws of the State of North Carolina. If he wasn't going back to the shanty cars on that train, he was a trespasser and not entitled to recover. There is no wilfulness alleged, and a trespasser would not be entitled to recover damages unless his injury was the result of wilfulness."

The motion was refused, and defendant then practically renewed it in requests to charge which were also refused.

The Court, being of the opinion that the testimony made an issue of fact as to whether the parties were engaged in interstate commerce at the time of the injury, and, therefore, as to whether the case was governed by the State or the Fed-

eral law, instructed the jury as to both, and pointed out the difference between them, and told them to apply the State law, if they found from the evidence that plaintiff was not engaged in interstate commerce, but that, if they found that he was engaged in interstate commerce, then they must apply the Federal law, as declared, and render a verdict accordingly. As to how they should determine that issue of fact, the jury was instructed as follows:

"Now, you will want to know the rule of law by which you are to find out how this plaintiff was employed at the time; that is, the rule of law by which you will have to find out whether or not he was engaged in interstate commerce. If, at the time he was injured, he was doing something essential to the carrying on of the work for which he was engaged, and that work was connected with railroad tracks over which both interstate and intrastate trains ran indiscriminately, or if he was doing some minor task that was at all connected with that kind of work, he would be engaged in interstate commerce. If the act that he was doing at the time he was injured was a necessary incident of his day's work and partook of the character of that work as a whole, and that work was connected with interstate commerce, under the principle that I have just given you, then he would be engaged in interstate commerce; otherwise he would not be."

The first four exceptions may be considered together, as they all question the ruling of the Court in refusing a nonsuit and directed verdict on the grounds hereinbefore stated, and on one additional ground, which, under the rules, cannot be considered, because it was not presented to the Court below. The first and second grounds of the motion for a directed verdict are practically the same, and the same as the grounds of the motion for nonsuit. These motions were properly refused, because, as will be seen from the statement of the evidence, it was conflicting, and

it was for the jury to decide whether the plaintiff or the defendant's witnesses told the truth.

As to the third ground of the motion for a directed verdict, which is also the basis of the fourth exception, even if it be assumed that the testimony showed conclusively, as matter of law, that the parties were engaged in interstate commerce, and, therefore, that the case was controlled by the Federal statute, there was no error in refusing to direct a verdict for defendant, for even under that law the evidence was sufficient to carry the case to the jury.

It had been made an issue of fact by the pleadings whether the case was governed by the State or Federal law; plaintiff alleging that it was governed by the State law, and defendant alleging that it was governed by the Federal law. It will be seen from the record that, at no time did defendant ask the Court to hold, as matter of law, after hearing all the evidence, that the case was governed by the Federal law, and to so instruct the jury. Therefore we are not called upon to decide whether there was error in submitting that question to the jury as one of fact.

It is true that, in the premise of the third ground of the motion to direct the verdict, defendant does take the position that "the uncontradicted testimony shows that both defendant and plaintiff were engaged in interstate commerce at the time of the injury," and, therefore, the verdict should be directed for defendant because the action was brought under the State law, which is a *non sequitur,* and a very different proposition from a request to charge that the evidence brought the case within the Federal law; for, as we have already said, even if that was so, the evidence was sufficient to carry the case to the jury, and it would have been error to direct a verdict for defendant, and that was what the Court was asked to do.

It has been so well settled, that citation of the cases is unnecessary (some of them are cited in the briefs of counsel), that where it appears, as matter of law, upon the undis- puted evidence, that either the State or Federal law is the applicable law, it becomes the duty of the Court to instruct the jury to apply the one or the other as the case may be. But if the evidence makes an issue of fact as to which law is applicable, then the Court should leave it to the jury to decide that issue, and then apply the applicable law; and, in such a case, it becomes the duty of the Court to instruct the jury the principles applicable to the case under both the State and the Federal law, and tell them to apply the one or the other, as they find the preliminary fact as to the nature of the employment. That was done in this case, and we fail to see where it could have resulted in prejudice to defendant, for we must assume that, if the jury found that plaintiff and defendant were engaged in interstate commerce, under the instructions given them as to how to decide that issue (and to these instructions no exception has been taken), they applied the Federal law as directed by the Court. We must assume, also, that if the evidence upon that issue was all one way, as contended by defendant, and susceptible of no other inference than that the parties were engaged in interstate commerce, the jury drew the correct inference, and decided the case according to the Federal law. At any rate, that question is not properly before us, because, as we have seen, the Court was not requested to hold or charge, as matter of law, that the Federal law governed the case.

The fifth and last exception is: "That the presiding Judge erred in charging the jury as follows: 'If, on the other hand, you should find from the evidence that he was not employed in interstate commerce at the time, but was employed by the Southern Railway Company as a laborer in North Carolina, then you should apply the principle

34—110.

as to assumption of risk applicable to the Employers' Liability Act,' and again as follows: 'Now, if you find that the plaintiff was not engaged in interstate commerce, was not employed to do some act connected therewith at the time he was injured, then you should apply the North Carolina law, if at the time he was employed as a laborer in North Carolina.' These charged misstating the employment as intrastate employment, and leave the jury under the impression that if the party was employed as a laborer in North Carolina he would be employed in intrastate work, when he should have gone further and explained what constitutes intrastate work."    •

This exception consists of excerpts taken from widely different parts of the charge, and, being so removed from their immediate context, neither appears to be quite so clear as when read in its own proper setting.  The record shows, too, that the first excerpt is incorrectly quoted, the words "North Carolina" being omitted just before the words "Employers' Liability Act" in the last line of the excerpt. Insert these words in their proper place, and the charge becomes quite intelligible, to wit, that, if the parties were not engaged in interstate commerce, then the principle of assumption of risk as declared by the North Carolina Employers' Liability Act (Laws 1913, c. 6) was applicable.

We fail to see wherein the Court, in either of these excerpts or elsewhere in the charge, misstated the nature of the employment as intrastate employment, or left the jury under the impression that, if plaintiff was employed as a laborer in North Carolina, he was engaged in intrastate work. There was no dispute about the fact that he was employed as a laborer in North Carolina.  But that, of course, did not determine whether he was engaged in intrastate or interstate commerce.  And, after giving the jury instructions (to which no exception had been taken) as to how they should determine whether he was engaged in interstate commerce, the Court told them, if he was not so engaged, the North

Carolina law was applicable. In this there was no error, for he was either engaged in interstate commerce or he was not, and, if he was not, it necessarily followed that the case was governed by the North Carolina law.

Judgment affirmed.